# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

UNITED STATES OF AMERICA)
                   )

v.                    )     **CRIM. NO. 19-00053-WS-B**
                   )

TERRANCE WILLIAMS    )

## UNITED STATES' RESPONSE TO WILLIAMS' 28 U.S.C. § 2255 MOTION

The United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, submits this response to Terrance Dwayne Williams' *pro se* motion seeking relief under 28 U.S.C. § 2255. [Doc. No. 84.] He argues that he was denied his right to counsel during several phases of his trial proceedings and on appeal. He also moves for discovery of several categories of documents, which he alleges contain evidence withheld from him that would have been helpful to his defense. [Doc. No. 86.]

The record affirmatively contradicts Williams' claims that he was denied his right to counsel so they should be denied without a hearing. Similarly, Williams' claim that evidence was improperly withheld from the defense is waived and meritless, so it should be dismissed. The same evidence would not affect the merits of his claims of ineffective assistance of counsel, so there is no good cause to order discovery. His motion for discovery should thus also be denied.

## I.    Background and Procedural History

In 2019, a grand jury returned an indictment charging Williams with five counts of possessing cocaine with the intent to distribute it (21 U.S.C. § 841(a)(1)). [Doc. No. 1.] Attorney Samuel Briskman represented him during his district court proceedings.

### A.    The motion to suppress

Counsel for Williams moved to suppress evidence seized during the execution of a search warrant at Williams' residence on Overlook Road. [Doc. No. 19.] Counsel argued that the delay between the issuance of the search warrant and its execution was unreasonable and that there was "no indication of reliability of the CI." [*Id.* at 1, 3.]

The United States opposed the motion to suppress. It first explained that delay in the execution of a search warrant was only grounds for suppression where there was "prejudice" or "evidence of an intentional and deliberate disregard" for the deadline set out in Rule 41 of the Federal Rules of Criminal Procedure. [Doc. No. 26 at 2 (quoting *United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993)).] Williams had not met that standard, since officers executed the search warrant within the deadline set out in that rule. [*Id.*]

The United States also addressed the reliability of the CI. It pointed out that the search warrant application detailed the CI's reliability, including how the information the CI provided in earlier cases had "been proven to be reliable" and had "led to the arrest of individuals for

various drug crimes and also the seizure of various illegal narcotics." [*Id.* at 3.] Against that evidence of the CI's reliability, the United States observed that there was no indication that the CI was unreliable. [*Id.*] Indeed, officers equipped the CI with audio/video recording equipment as well as tracking equipment, and officers watched the CI while en route to their video-recorded transactions with Williams. [*Id.*]

After the United States filed its opposition to Williams' motion, counsel for Williams moved to withdraw the motion. [Doc. No. 27.] The district court granted the motion to withdraw, noting that the United States' response had "convincingly refuted defendant's arguments for suppression." [Doc. No. 28.]

### B. Williams enters a knowing and voluntary guilty plea

Williams pled guilty to count five of the indictment, possessing cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Through his written plea agreement, Williams confirmed that he understood his rights to be represented by an attorney, plead not guilty, proceed to trial, cross-examine witnesses, produce evidence in his own defense, and not be compelled to incriminate himself. [Doc. No. 33 at 1.] The agreement indicated that he had discussed the facts of his case with his attorney, that his attorney had explained the essential legal elements of the charge, and that he was satisfied with his attorney's "faithful[ ],

skillful[ ], and diligent[ ]" representation. [*Id.* at 2.] The agreement further confirmed that Williams had not been coerced to plead guilty and that he understood the maximum penalty for the offense. [*Id.* at 3–5.]

The written plea agreement made clear that Williams "ha[d] reviewed the application of the Guidelines with his attorney and underst[ood] that no one can predict with certainty what the sentencing range will be in this case" until the Court has ruled on the pre-sentence investigation report. [*Id.* at 4.] And, it emphasized that Williams understood that "he w[ould] not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range." [*Id.* at 4.] That being said, the plea agreement included the United States' commitment to recommend that Williams be sentenced at "the low end of the advisory sentencing guideline range per count of conviction as determined by the Court." [*Id.* at 6.]

Through his plea agreement, Williams "agree[d] to confess the forfeiture to the United States of all properties which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities." [*Id.* at 5.]

Williams' written plea agreement also included a waiver of appeal and collateral attack. [*Id.* at 6–7.] Williams agreed to "knowingly and voluntarily waive[ ] the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under

28 U.S.C. § 2255." [*Id.*] Under the agreement, Williams would still be able to argue on direct appeal that his sentence exceeded the statutory maximum, and he could also appeal based on an upward departure or variance. [*Id.* at 7.] He further retained the ability to argue that he had received the ineffective assistance of counsel in a 28 U.S.C. § 2255 motion. [*Id.*]

A factual resume accompanying Williams' plea agreement described the factual basis for his plea. [*Id.* at 10–11.] He admitted that a CI had made four videotaped controlled buys of cocaine from Williams, concluding in a "buy/bust" operation involving 140 grams of cocaine which Williams intended to sell to the CI. [*Id.*] The factual resume also detailed officers' recovery of another ounce of cocaine and $41,459 in cash at his home, which he "agree[d] to forfeit" as "drug proceeds." [*Id.*]

Williams entered his guilty plea before Judge William H. Steele. [Doc. No. 79.] During the plea colloquy, Williams confirmed that his attorney had reviewed the indictment in his case with him and that he fully understood the charges. [*Id.* at 3.] He further assured the Court that he was "fully satisfied" with his attorney's performance and had "fully discussed" the facts surrounding the charge with his attorney. [*Id.*]

Williams next assured the Court that he had had an opportunity to review the plea agreement with his attorney. [*Id.* at 4.] In response to the Court's question, he assured it that he "fully understood the terms and conditions of the plea agreement and the factual resume, and that

[he] agree[d] with it." [*Id.*] He specifically assured the Court that he understood that the Court would not be able to determine an appropriate sentence until resolution of objections to the presentence investigation report and that the ultimate sentence imposed "might be different from any estimate [his] attorney or anyone else might have given [him]." [*Id.* at 6.] He further understood that he would be bound by his plea agreement even if his sentence was "more severe" than he expected. [*Id.*] Williams also agreed that he understood the waiver of appeal in the plea agreement. [*Id.* at 6–7.]

Finally, in response to the Court's questions, Williams agreed that the material facts in the factual resume were accurate: he knowingly possessed cocaine with the intent to distribute it. [*Id.* at 8.] The Court found that Williams' decision to plead guilty was knowing and voluntary, and accepted his plea. [*Id.* at 8–9.]

## C. The district court sentences Williams as a career offender over defense counsel's objection

The pre-sentence investigation report ("PSR") detailed Williams' criminal history. In 1997, he pled guilty to conspiring to possess powder and crack cocaine with the intent to distribute it. [Doc. No. 48 at 6.] He was sentenced to 63 months in prison, began a term of supervised release in 2000, and was sentenced to 27 months for violating the terms of his supervised release in 2004. [*Id.*] In 2004, he was found guilty in state court of trafficking in cocaine, which required that he "did knowingly sell,

manufacture, deliver, bring into this state, actually possess, or constructively possess 28 grams or more" of cocaine. [Doc. No. 48 at 7.] He was sentenced to 20 years in prison for that offense and released to parole in 2012. [*Id.*] The PSR determined that Williams was a career offender under U.S.S.G. §4B1.1(b). [*Id.* at 7.]

Counsel for Williams filed an objection to the PSR noting that Williams "intends to challenge his 2004 conviction" for trafficking cocaine on "constitutional" grounds. [Doc. No. 52 at 1.] Therefore, counsel argued, that conviction should not be considered "final" for purposes of determining whether Williams was a career offender. [*Id.*]

At sentencing, counsel for Williams expanded on his objection to the career-offender designation. [Doc. No. 76.] Counsel argued that, in addition to the prospective constitutional challenge to Williams' 2004 conviction, the Court should also disregard both convictions because they were remote in time. [*Id.* at 3.] The Court overruled counsel's objections. [*Id.* at 5.]

The district court ultimately imposed the low-end Guidelines sentence of 151 months in prison. [*Id.* at 20.]

### D.   Williams' attorney on appeal files an *Anders* brief

Williams' attorney on appeal, Domingo Soto, filed an *Anders* brief with the Court of Appeals. [Exhibit A.] Counsel's brief described the

proceedings in Williams' case in detail. [*Id.* at 5–15.[1]] In doing so, counsel concluded that he discerned no appealable issue in those proceedings. [*Id.*] In particular, counsel concluded that Williams' plea agreement—including its waiver of appeal—was enforceable. [*Id.* at 14–15.] Counsel then discussed the exceptions to Williams' waiver of appeal and concluded that none of those exceptions applied in his case. [*Id.* at 16–17.]

Finally, counsel concluded that there were no preserved or appealable sentencing issues in Williams' case. Counsel considered whether certain convictions in Williams' criminal history were too remote to count toward career-offender status, and concluded that they were not. [*Id.* at 17–18.] Counsel also considered whether one of Williams' prior convictions, an Alabama conviction for trafficking in cocaine, should have been excluded based on Williams' assertion that he "intended" to challenge it on constitutional grounds. [*Id.* at 19.] Counsel concluded that no such challenge was evident in the record and that any prospective challenge would be procedurally defaulted. [*Id.* at 19–21.] Counsel certified that he had supplied Williams with a copy of the brief. [*Id.* at 22.]

### E. The Court of Appeals dismisses Williams' appeal based on his valid waiver of appeal

The United States moved to dismiss Williams' appeal based on his valid waiver of appeal and the Court of Appeals granted the motion. [Doc.

---

[1] Citations to Exhibit A are to the printed page numbers at the bottom of each page, not to the electronic numbers at the top.

No. 81.]  That court concluded that "Williams knowingly and voluntarily waived his right to appeal his sentence."  [*Id.* at 2.]  It observed that defense counsel had objected to career-offender status during sentencing, but that issue was within the scope of his appeal waiver because it waived "the right to appeal debatable legal issues."  [*Id.* at 2–3.]

## II.  Summary of Williams' Arguments

### A.  28 U.S.C. § 2255

Williams writes that he is entitled to relief under 28 U.S.C. § 2255 because he was denied his right to counsel at several stages of his trial proceedings and on appeal.  [Doc. No. 84.]

*Suppression motion.*  Williams' first enumerated claim is that his attorney did not conduct a background check on a confidential informant who investigators relied upon when seeking a search warrant of Williams' residence.  [*Id.* at 4; Doc. No. 84-1 at 1, 5.]  Had counsel done an adequate investigation, Williams says, counsel would have discovered that the CI had pending drug charges in another state.  [Doc. No. 84-1 at 1.]

Relatedly, Williams faults his attorney for withdrawing the motion to suppress.  [Doc. Nos. 84 at 8; 84-1 at 5.]  He writes that the motion had a "good chance" of success because the CI's information was hearsay, the CI did not go to the residence, and the controlled buys did not occur at

the residence.  [Doc. No. 84 at 8.]  He also implies that the CI's motivations were disqualifying.  [*Id.*]  Williams argues that "there was no strategic reason other than incompetence" for his attorney to withdraw the suppression motion.  [Doc. No. 84-1 at 5.]

*Plea proceeding.*  Williams next argues that counsel "persuaded" him to plead guilty "at the last minute."  [Doc. No. 84 at 5.]  In Williams' view, the plea agreement "provided [him] with no benefits," including a waiver of any ability to challenge the forfeiture of property in his case, which he suggests was improperly included in the agreement.  [Doc. No. 84-1 at 3.]  He says that the first time that counsel told him about the plea offer was on the day of his plea proceeding.  [*Id.*]

*Sentencing.*  At sentencing, Williams argues that counsel did not properly preserve an argument that he was not a career offender.  [Doc. No. 84 at 7.]  Instead, he writes, counsel should have argued that his prior offense was "indivisible" under *Mathis v. United States*, 136 S. Ct. 2243 (2016), and that, applying the categorical approach to his prior conviction, he should not have been sentenced as a career offender.  [*Id.*; Doc. No. 84-1 at 4–5.]

*Appeal.*  Finally, Williams argues that he was denied his right to counsel on appeal because his lawyer on appeal, Domingo Soto, filed an *Anders* brief when he "could have raised a couple of issues on direct appeal."  [Doc. No. 84-1 at 20.]  He says that his lawyer could have argued

that the career offender enhancement did not apply in his case or that his trial attorney had been ineffective. [*Id.* at 4, 20.]

## B. Motion for discovery

Williams also filed a document captioned as a "motion for discovery." [Doc. No. 86.] He writes that he has shown "good cause" under Rule 6 of the Rules Governing Section 2254 and 2255 motions. [*Id.* at 1.] Specifically, he requests "grand jury transcripts," "chain of custody authorization" for the CI, "investigative materials," and the "case file." [*Id.* at 2.] He asserts that those materials would establish that the United States "withheld favorable evidence from the defense and the court about the confidential informant," to wit: that the CI had pending drug charges at the time of the investigation and had crossed state lines "in the capacity of a special agent." [*Id.*]

## III. Applicable Legal Principles

Collateral review "is an extraordinary remedy" that "will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). After direct appeal, "a presumption of finality and legality attaches to the conviction and sentence." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). Thereafter, courts are "entitled to presume" that the defendant's sentence is lawful. *United States v. Frady*, 456 U.S. 152, 164 (1982). The burden of proof on collateral review is therefore on the prisoner to show that they are entitled to the relief they seek. *Hawk v. Olson*,

326 U.S. 271, 279 (1945); *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).  Even when a prisoner demonstrates an error in the proceedings, they are not entitled to relief unless they show that the error caused a "substantial and injurious effect or influence" in those proceedings.  *Brecht*, 507 U.S. at 638.

A court does not need to hold a hearing on the motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Thus, "when the petitioner's allegations are affirmatively contradicted by the record or if such claims are patently frivolous," this Court should deny the motion without a hearing.  *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).  Where a district court decides to deny a movant's request for a hearing, the Eleventh Circuit reviews that decision for an abuse of discretion.  *Id.*

Further, a hearing is not necessary where the motion is "based upon unsupported generalizations."  *United States v. Guerra*, 588 F.2d 519, 520–21 (5th Cir. 1979).[2]  Indeed, where a defendant's motion contains only "conclusory allegations unsupported by specifics," this Court may deny it without further proceedings.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).  Rather, to be entitled to an evidentiary hearing, a § 2255 petitioner must

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002).

This Court is familiar with the "rigorous standard" of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under that standard, a defendant claiming ineffective assistance of counsel must show that counsel's performance was deficient in that it fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendant must also show that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The burden of persuasion is on petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc), and that he was prejudiced by that performance. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000).

## IV. Analysis

Williams' motions should be denied. His claims that he was denied his right to counsel should be denied without a hearing because the existing record refutes his claims. To the extent that he raises a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), it is both waived and meritless. Finally, the documents he requests in his motion for discovery would not change the result of any of his claims, so good cause does not exist to order discovery.

## A.    Suppression motion

Williams was not denied his right to counsel before his guilty plea. He argues that counsel should have done more to investigate the credibility of a CI involved in the investigation and, relatedly, that counsel should have persisted in moving to suppress evidence found at his home. His argument is meritless.

At the outset, however, the Court need not reach the adequacy of counsel's pre-plea performance if it determines, as argued in Section IV.B. *infra*, that Williams had the able assistance of counsel at his change-of-plea proceeding and entered a knowing and voluntary guilty plea. Regardless, and as detailed below, Williams has not shown that he was denied his right to counsel prior to his guilty plea.

### 1.    Williams waived his suppression-motion argument by entering a knowing and voluntary guilty plea

When a defendant admits that he is guilty of a charged offense, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). That includes claims relating to suppression issues, since they are not jurisdictional. *Franklin v. United States*, 589 F.2d 192, 194–95 (5th Cir. 1979). Accordingly, Williams' argument that he was denied his right to counsel before his guilty plea "is waived unless his guilty plea was unknowing, involuntary, and unintelligently given." *Fisher v. United States*, 2012 WL 6680315 at *6

(S.D. Ala. Dec. 3, 2012); *accord Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015).

Williams had the able assistance of counsel at his plea proceeding and entered a knowing and voluntary plea. *See* Section IV.B, *infra*. Williams' plea therefore waived any prior nonjurisdictional defect in the proceedings, including his claim that he was denied his right to counsel in relation to the suppression motion.

## 2. Williams was not denied his right to counsel in relation to counsel's attempt to suppress evidence

Williams was not denied his right to counsel with respect to the suppression motion. Counsel did all that he could to interrogate the veracity of the search warrant affidavit and wisely withdrew the motion to suppress as meritless. Regardless, Williams was not prejudiced by counsel's performance because any additional effort to pursue the motion to suppress would have failed.

Any effort to seek to compel the CI's identity would have failed. The United States possesses a privilege to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officials. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). That privilege is not absolute; it may be overcome where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60–61. The Eleventh Circuit Court of

Appeals has identified three factors to consider when balancing the interests in disclosure against the interests of nondisclosure of a CI's identity: (1) "the extent of the informant's participation in the criminal activity," (2) "the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant," and (3) "the government's interest in nondisclosure." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991) (quotation omitted).

Before weighing the balancing factors concerning disclosure of a CI's identity, a court must first ascertain whether the United States has a valid reason for nondisclosure. *United States v. Tenorio-Angel*, 756 F.2d 1505, 1511 (11th Cir. 1985). "Typically, the Government's justification for refusing disclosure is that the CI's physical safety may be endangered by disclosure, or the CI's usefulness as a confidential source, past or future, may be impaired as a result of releasing his or her identity." *See United States v. Robinson*, 2008 WL 5381824 at *4 (S.D. Fla. Dec. 19, 2008).

Applying those principles, counsel's efforts were reasonable because any attempt to reveal the CI's identity would have failed. And, "an attorney will not be held to have performed deficiently for failing to perform a futile act." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017). As in other cases involving CIs, the United States had an appropriate reason for not disclosing the identity of the CI. Had the topic been litigated prior to the suppression hearing, the United States would have

pointed out that releasing the CI's identity would have risked putting that individual in harm's way and undermined investigations past, present, and future.[3]

Williams' interest in the CI's identity would not have outweighed the United States' interest in nondisclosure. To be sure, the CI was a witness to Williams' criminal conduct that supported the issuance of the search warrant. [*See* Doc. No. 26-1 at 3–13.] But the CI's testimony would not have been directly relevant to whether the search warrant was properly issued. As the United States emphasized in its opposition to the motion to suppress, and as detailed in the search warrant affidavit, law enforcement supplied the CI with an audio-visual recording device that recorded drug deals with Williams on four separate occasions: in October and November of 2018. [*See* Doc. Nos. 26 at 3; 26-1 at 6, 7, 9, 11.]

Given how the search warrant was supported by audio-visual recordings of Williams' drug-distribution conduct on four separate occasions, Williams would not have prevailed in seeking to unmask the CI. That is because, whatever the CI's testimony would have been, the search warrant would have been amply supported by indisputable evidence of his illegal conduct.

---

[3] Williams' filing implies that he believes that he knows the identity of the CI in his case. His assertion to that effect does not change the analysis, since there remains a "general interest in maintaining the informant's confidentiality" even where a defendant believes that they already know the identity of the CI. *Tenorio-Angel*, 756 F.2d at 1510 (collecting cases).

Notably, Williams does not now argue that the description of his conduct in the search warrant affidavit was false. [*See* Doc. Nos. 84 at 4, 8.] Instead, he suggests that the supposed CI's pending drug charges or motivations were disqualifying in some way, and that an attack on the CI's credibility would have led to suppression of the challenged evidence. [*Id.*] But whatever the CI's credibility or motivations, the video recordings of Williams' conduct would have remained and firmly established probable cause to issue the search warrant.

In short, Williams has not shown that counsel's performance was deficient for not pursuing more information about the CI. Since the effort would have been fruitless, counsel's decision against pursuing more information was not deficient performance. *Pinkney*, 876 F.3d at 1297.

Williams also faults counsel for withdrawing the motion to suppress. [Doc. Nos. 84 at 8; 84-1 at 5.] He contends that counsel should have persisted in the suppression motion because the CI's statements were hearsay and that the CI's motivations were improper. [*Id.*] But courts may rely on hearsay evidence from a CI where the issuing judge makes the "practical, common-sense decision" that the totality of the circumstances, including the veracity and basis of the CI's knowledge, support a fair probability that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). That was the case here, since the affidavit related the affiant's description of the CI's past information as reliable and explained how the CI's description of the

controlled buys were corroborated by video recordings and independent law enforcement observations of the events. [Doc. No. 26-1 at 1–2, 6, 7, 9, 11.]

Williams further argues that counsel should have pursued the motion to suppress because the controlled buys did not occur at the residence that was ultimately searched, which he says would have supported suppression. [Doc. No. 84 at 8.] However, the affidavit detailed the reliable CI's information that Williams was storing suspected powder cocaine at his residence. [Doc. No. 26-1 at 3.] It also detailed how officers observed Williams return to the residence in question immediately after two of the controlled buys. [*Id.* at 10, 13.] The affiant further related that, in his training and experience "drug dealers commonly keep currency, notes, and other documents related to their drug transactions." [*Id.* at 14.] Those circumstances provided ample probable cause to believe that evidence of Williams crimes would be found at his residence even though the controlled buys occurred elsewhere.

The record conclusively contradicts Williams' arguments concerning counsel's efforts to suppress evidence found in the execution of a search warrant of his house. He has thus failed to show that counsel's efforts "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

For the same reasons, Williams cannot meet *Strickland*'s prejudice prong. Even had counsel taken the steps Williams says he should have

taken, those steps would have led to the same result, meaning Williams was not prejudiced. *Strickland*, 466 U.S. at 694. Under either prong, Williams' arguments concerning the suppression motion should be denied.

## B. Plea proceeding

The record of Williams' change-of-plea hearing conclusively shows that his decision to plead guilty was knowing and voluntary. That record affirmatively contradicts his current arguments that counsel's performance was deficient because counsel "persuaded" him to plead guilty "at the last minute" and because the plea agreement was not beneficial. [Doc. Nos. 84 at 5, 84-1 at 3.]

Williams' sworn statements at his change-of-plea hearing establish that he entered his plea knowingly and voluntarily. He assured the Court that he had "fully discussed" the facts surrounding the charges against him and that he "fully understood the terms and conditions of the plea agreement." [Doc. No. 79 at 3–4.] In turn, that agreement reflected his understanding that he would waive his trial rights by pleading guilty. [Doc. No. 33 at 1.] The same agreement confirmed that Williams understood his sentencing exposure, the application of the Sentencing Guidelines to his case, and the possibility that the Court could depart or vary from the Guidelines range. [*Id.* at 4.] And, the plea agreement included Williams' agreement to confess forfeiture of property related to his criminal activity. [*Id.* at 5.] Based on Williams' understanding of the

written plea agreement and on his sworn statements in Court, the Court appropriately found that his decision to plead guilty was knowing and voluntary, and accepted the plea. [Doc. No. 79 at 8–9.]

The assertions in Williams' motion do not establish that he was denied his right to counsel at that proceeding. Setting aside whether his claims would establish a viable claim of ineffective assistance of counsel even if they were credited, they are affirmatively contradicted by the record. And, there is a "strong presumption" that his sworn statements at the plea proceeding were true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

For example, Williams now contends that his attorney "persuaded" him to plead guilty "at the last minute." [Doc. Nos. 84 at 5; 84-1 at 3.] But, as noted, Williams assured the Court that he had "fully discussed" his case with his attorney. [Doc. No. 79 at 3.] His in-court statements confirmed the language in the written plea agreement, which reflected that he had had adequate time to consult with his attorney; that he was satisfied with his attorney's "faithful[ ], skillful[ ], and diligent[ ]" representation; and that he had not been coerced into pleading guilty. [Doc. No. 33 at 2–5.]

Similarly, Williams now claims that the plea agreement "provided [him] with no benefits," singling out the provision in which he agreed to confess forfeiture of property related to his illegal activity. [Doc. No. 84-1 at 3.] But Williams assured the Court that he had reviewed the plea

agreement with his attorney and that he understood it. [Doc. No. 79 at 4.] His subsequent knowing and voluntary decision to enter a guilty plea pursuant to that agreement reflects his personal weighing of the advantages and disadvantages of agreeing to the terms of the agreement. That the agreement had significant advantages bears emphasis: in exchange for pleading guilty, Williams secured the United States' agreement to dismiss the four other counts of the indictment, its agreement to recommend a sentence on the low end of the Guidelines range, and acceptance-of-responsibility credit lowering his offense level. [Doc. Nos. 33 at 6; 48 at 5.]

To the extent that Williams argues that counsel should have negotiated a more favorable plea agreement [Doc. No. 84-1 at 3], that argument fails as well. His apparent belief that counsel should have been able to negotiate a more favorable plea agreement falls far short of establishing facts supporting a claim of ineffective assistance of counsel. Williams does not assert, let alone establish, that the United States would have been open to a different plea agreement or that the Court would have accepted it. Williams' conclusory suggestion to the contrary is insufficient to support a claim that he was denied his right to counsel. *Aron*, 291 F.3d at 715 n.6.

Finally, Williams suggests that it was improper for the plea agreement in his case to include a confession of forfeiture and that counsel's performance was deficient for not raising an objection to that provision.

[Doc. No. 84-1 at 3.]  But as the Supreme Court has held, "Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes" and is properly considered a part of a defendant's sentence. *Libretti v. United States*, 516 U.S. 29, 39 (1995).  Counsel was doubtless aware that the forfeiture provision in Williams' plea agreement was entirely proper, and it was not deficient performance for counsel to decline to seek to renegotiate the agreement based on the idea that the forfeiture provision was unlawful, particularly since Williams' agreement to it was knowing and voluntary.

Thus, the record conclusively establishes that counsel's performance at Williams' plea proceeding was reasonable.  And, since his plea was knowing and voluntary, Williams cannot show that he was prejudiced by counsel's performance because the same outcome would have resulted: his knowing and voluntary plea.

## C.  Sentencing

Williams was not denied his right to counsel at sentencing.  He alleges that counsel should have done more to contest the district court's conclusion that he was a career offender under U.S.S.G. §4B1.1(b)(3). [Doc. Nos. 84 at 7; 84-1 at 4–5.]  However, any such effort would have been meritless, so counsel's performance was not deficient and Williams was not prejudiced by the absence of further argument on that issue.

Under U.S.S.G. §4B1.1, a defendant qualifies as a career offender where (1) the defendant was eighteen years of age or older at the time of

the offense of conviction, (2) the current offense of conviction is a felony that constitutes either a "crime of violence" or a "controlled substance offense," and (3) the defendant previously was convicted of at least two felony offenses for either a "crime of violence" or a "controlled substance offense." U.S.S.G. §4B1.1(a). The Guidelines define a "controlled substance offense" as meaning an offense "under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance (or a counterfeit substance) within intent to manufacture, import, export, distribute, or dispense." *Id.* §4B1.2(b). An application note to that section specifies that the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such crimes." *Id.* §4B1.2 app. note 1.

Williams met every criterion for career-offender status, so the Court properly found that he was a career offender. He had two prior felony convictions for controlled substance offenses: a 1996 federal conviction for conspiring to possess powder and crack cocaine with the intent to distribute it and a 2004 state conviction for trafficking in cocaine. [Doc. No. 48 at 6–7.] And, his offense of conviction in this case was also a controlled substance offense.

Williams now faults his attorney for not invoking the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016) and

arguing that one of his convictions would not count toward career-offender status. [Doc. Nos. 84 at 7; 84-1 at 4–5.] His argument is conclusory and vague, since it does not identify which of his prior convictions he is referring to. [*Id.*] His argument contains mere "unsupported generalizations" about defense counsel's efforts at sentencing, so it can be denied out of hand without a hearing. *Guerra*, 588 F.2d at 520–21.

It nevertheless bears mention that the Supreme Court's decision in *Mathis* would have no bearing on his case. That case describes the proper application of the categorical and modified-categorical approach used to determine whether a prior conviction falls into a certain defined category, such as a crime of violence as defined in the Armed Career Criminal Act or a controlled substance offense as defined in the Sentencing Guidelines. *See generally United States v. Bates*, 960 F.3d 1278, 1285–87 (11th Cir. 2020).

Both of Williams' prior felony convictions are categorically controlled substance offenses under U.S.S.G. §4B1.2(b). To determine whether a prior conviction falls into a certain category using the "categorical" approach, courts compare the elements of the crime to the statutory definition, looking "only to the elements of the predicate offense statute" and not to the facts of the defendant's particular case. *Bates*, 960 F.3d at 1286.

Williams' first qualifying conviction was for conspiracy to possess crack cocaine with the intent to distribute it in violation of 21 U.S.C.

§ 846. [Doc. No. 48 at 6.] As the Eleventh Circuit has repeatedly held, a violation of that provision constitutes a "controlled substance offense" within the meaning of that term in the career-offender provisions. *See United States v. Dupree*, 849 F. App'x 911, 912 (11th Cir. 2021) (citing *United States v. Weir*, 51 F.3d 1031, 1032 (11th Cir. 1995)).

Williams' other qualifying was for violating Alabama's law prohibiting "trafficking in cocaine," Ala. Code § 13A-12-231(2). [*See* Doc. No. 48 at 7; *see also* AlaCourt entry for Baldwin County case number CC04-1266.] Under that statute, a person is guilty of "trafficking in cocaine" if they "knowingly sell[ ], manufacture[ ], deliver[ ], or bring[ ] into" Alabama 28 grams or more of cocaine or any mixture containing cocaine, or if a person is in "actual or constructive possession" of that amount of cocaine or a mixture containing cocaine. Ala. Code § 13A-12-231(2)(a). To be sure, that statute criminalizes the possession of more than 28 grams of cocaine without expressly requiring the element that the defendant intended to distribute the substance. However, the Eleventh Circuit has interpreted an identical Georgia statute to meet the Guidelines' criteria for "controlled substance offenses." *Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020). That is because the quantity element—at least 28 grams of cocaine—along with the statute's assignment of the label "trafficking" to the statute, allows the inference that the defendant's possession of that amount of cocaine was possessed with the intent to distribute it. *Hollis*, 958 F.3d at 1123–24.

Just like convictions for violating the identical Georgia law, Williams' Alabama conviction for "trafficking in cocaine" also constituted a "controlled substance offense" under the Guidelines. The statute criminalized "trafficking" in that substance because, at minimum, the defendant possessed 28 grams of cocaine, enough to infer that their intent was to distribute it. *See id.* (citing *United States v. White*, 837 F.3d 1225, 1232–34 (11th Cir. 2016) (holding that a conviction for violating Ala. Code § 13A-12-231(2)(a) met the definition of "serious drug offense" in the Armed Career Criminal Act)).

Thus, under binding Eleventh Circuit precedent, both of Williams' prior convictions counted toward his career-offender status. Counsel's performance at sentencing was thus not deficient because any effort to raise the Supreme Court's decision in *Mathis* would have been futile. *Pinkney*, 876 F.3d at 1297. For the same reasons, Williams was not prejudiced by counsel's decision against raising *Mathis*, since such an objection would have failed.

### D.    Appeal

Finally, Williams argues that he was denied his right to counsel on appeal when counsel, Domingo Soto, filed an *Anders* brief. [Doc. No. 84-1 at 20; *see* Exhibit A.] He cannot show deficient performance or prejudice on that claim, either.

To show that appellate counsel's performance was deficient in filing an *Anders* brief, Williams must show that counsel failed to comply with

*Anders'* requirements. *Grubbs v. Singletary*, 120 F.3d 1174, 1177 (11th Cir. 1997). To do so, counsel was required to file a brief "referring to anything in the record that might arguably support the appeal" and furnish the brief to Williams for the opportunity to raise additional issues. *Anders v. State of Cal.*, 386 U.S. 738, 744 (1967). If appellate counsel files a brief that complies with that rule, even if it "only marginally complied," the attorney's performance was not deficient. *Grubbs*, 120 F.3d at 1177.

Appellate counsel's brief far exceeded *Anders'* requirements. Beyond merely referencing potentially appealable issues, appellate counsel's brief thoroughly reviewed the facts of Williams' case and discussed issues that could potentially be raised on appeal. [Exhibit A.] In particular, it parsed whether Williams' waiver of appeal would be enforceable and concluded that it would. [*Id.* at 14–15.] Even though counsel concluded that Williams had validly waived sentencing arguments, counsel went further and analyzed potential sentencing issues in Williams' case. [*Id.* at 17–21.] Counsel properly supplied Williams with a copy of the brief. [*Id.* at 22.]

As with the deficient performance prong, Williams cannot carry his burden to show that appellate counsel's performance prejudiced him. First, even if counsel had raised the argument identified in Williams' motion, the result of the appeal would have been the same. The United States moved to dismiss Williams' appeal based on his valid waiver of appeal. The Court of Appeals granted that motion. [Doc. No. 81 at 2–3.]

In dismissing Williams' appeal, it held that any argument concerning his career offender status was within the scope of his appeal waiver. [*Id.*] Thus, even had counsel on appeal raised a challenge to Williams' career offender status, the appeal would have been dismissed based on his valid waiver of appeal.

Moreover, even if Williams' appeal waiver somehow did not apply to his career-offender argument, he was not prejudiced by counsel's failure to raise it because it was meritless. That is because, as described above, his arguments about whether he was properly sentenced as a career offender are meritless. *See supra*, IV.C.

## E. Williams' motion does not establish that evidence was withheld in violation of *Brady*

Any implied *Brady* claim in Williams' motion for discovery should be denied. [*See* Doc. No. 86.] Williams requests the grand jury transcripts, the "chain of custody authorization" for the confidential informant in question, unspecified "investigative materials," and his "case file." [*Id.* at 2.] He says that those materials would show that "the government withheld favorable evidence from the defense and the court about the confidential informant." [*Id.*] Namely, he claims that the materials would show that the confidential informant had "pending drug charges" in another state and had "cross[ed] state line[s]" while "acting in the capacity of a special agent." [*Id.*]

To the extent that Williams intends to advance a claim that the United States withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), his claim is waived and meritless. As set out above, Section IV.B., Williams' plea—including his waiver of filing most § 2255 claims—was knowing and voluntary. And he does not currently make any argument concerning his waiver to raise any claim in a § 2255 motion other than ineffective assistance of counsel. [*See* Doc. No. 33 at 6–7.] Thus, to the extent that he raises a *Brady* claim, the claim is within the scope of that waiver and should be dismissed. *United States v. Pizarro-Campos*, 506 F. App'x 947, 950 (11th Cir. 2013) (a defendant's voluntary waiver of their right to appeal included a *Brady* claim); *accord United States v. Jerdine*, 511 F. App'x 391, 393 (6th Cir. 2013).

Moreover, Williams' reference to withheld evidence does not establish a *Brady* violation. To establish a *Brady* violation, the defendant must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different. *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).

A "reasonable probability" is a probability "sufficient to undermine the confidence in the outcome." *United States v. Bagley*, 473 U.S. 667,

682 (1985). A "mere possibility that an item of undisclosed information might have helped the defense" does not establish prejudice. *United States v. Brewster*, 786 F.3d 1335, 1339 (11th Cir. 2015) (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976)).

Moreover, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). Thus, where a defendant claims that the prosecution withheld potentially useful impeachment evidence prior to their guilty plea, their claim may be denied without further analysis. *United States v. Williams*, 824 F. App'x 750, 755–56 (11th Cir. 2020) (quoting *Ruiz*, 536 U.S. at 628, 633).

Applying those principles, the allegations in Williams' motion, even if credited, would not give rise to an actionable *Brady* claim. He says that the "favorable" evidence in question would show that the CI was working with the police. [Doc. No. 86 at 2.] But that fact was evident on the face of the search warrant affidavit and not withheld from the defense. [*See* Doc. No. 84-1 at 6–19.] He also asserts that a person he believes was the CI had pending drug charges in another state. [Doc. No. 86 at 2.] At best, however, that information would be relevant only to impeach the CI's testimony had the CI testified. As noted, however, defendants do not have a constitutional right to impeachment evidence prior to entering a plea agreement. *Ruiz*, 536 U.S. at 633. Even if potential impeachment

evidence had not been provided to the defense, Williams was not entitled to it.

Moreover, any potential impeachment information about the CI would fail to give rise to a "reasonable probability that the outcome would have been different." *Vallejo*, 297 F.3d at 1164. As described in the search warrant affidavit and as Williams admitted in the plea agreement, the controlled buys of controlled substances were videotaped. [Doc. Nos. 33 at 10–11; 84-1 at 6, 7, 9, 11.] Even if he had the ability and opportunity to impeach the CI, then, it would have utterly failed to undercut the recordings of Williams' interactions with the CI.

In sum, Williams' reference to supposed favorable evidence being withheld from the defense does not establish a basis for relief. Such a claim was within the scope of the enforceable waiver in his plea agreement and should be dismissed. In the alternative, the claim would be properly denied as meritless.

## V. Williams' Motion for Discovery Should Be Denied

Based on the analysis above, Williams' motion for discovery should also be denied. [Doc. No. 86.] "Unlike typical civil litigants, habeas petitioners are 'not entitled to discovery as a matter of ordinary course.'" *Bowers v. U.S. Parole Com'n, Warden*, 760 F.3d 1177, 1183 (11th Cir. 2014) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Instead, discovery requests are governed by Rule 6(a) of the Rules Governing Section 2255 Cases in the United States District Courts, which provides that a

judge may, "for good cause, authorize a party to conduct discovery." The same rule further provides that the requesting party "must provide reasons for the request" and "specify any requested documents." Rule 6(b). This limitation is "consistent with the general admonition against allowing federal prisoners to use discovery in habeas proceedings as a fishing expedition." *United States v. Cuya*, 964 F.3d 969, 974 (11th Cir. 2020).

"Good cause" for discovery means that the defendant has advanced "specific allegations" that "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bowers*, 760 F.3d at 1183 (concerning the identical rule governing discovery in 2254 motions). A court's decision on a discovery request is reviewed for an abuse of discretion. *Id.*

Given the analysis demonstrating the lack of merit in Williams' motion, there is no good cause for discovery. Each of his claims of ineffective assistance of counsel may be denied without a hearing based on the existing record. And, even assuming the existence of evidence as described in his motion for discovery, counsel's performance would remain constitutionally adequate. Again assuming the existence of the evidence he seeks, any reliance on *Brady* would be similarly unsuccessful.

## VI. Conclusion

Williams' motions for discovery and to vacate his sentence should be denied without a hearing.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY
By:

*/s/ Oliver McDonald*
Oliver McDonald
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845
Fax: (251) 441-5277

## CERTIFICATE OF SERVICE

I certify that, on July 26, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically serve any counsel of record. Further, a copy of the foregoing was mailed on this date to: Terrance D. Williams, No. 06406-003, FCI Bastrop, P.O. Box 1010, Bastrop, Texas 78602.

*/s/ Oliver McDonald*
Oliver McDonald
Assistant United States Attorney