IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TERRANCE DWAYNE WILLIAMS,      *
# 06406-003,                   *
                               *
     Petitioner,               *
                               *   CRIMINAL NO. 19-00053-WS-B
vs.                            *   CIVIL ACTION NO. 21-00252-WS-B
                               *
UNITED STATES OF AMERICA,      *
                               *
     Respondent.               *

## REPORT AND RECOMMENDATION

Pending before the Court are Petitioner Terrance Dwayne Williams' Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 84) and "Second-In-Time Motion Pursuant to 28 U.S.C. § 2255" (Doc. 111), which the Court construes as a motion for leave to amend the initial § 2255 motion. This matter was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and it is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this

---

[1] United States District Judge William H. Steele presided over the proceedings in this action. The undersigned has reviewed Petitioner Williams' motions and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Steele.

matter.[2]  Upon consideration, the undersigned hereby recommends that Williams' § 2255 motion (Doc. 84) and motion for leave to amend (Doc. 111) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Terrance Dwayne Williams.  The undersigned further recommends that in the event Petitioner Williams requests a certificate of appealability and seeks to appeal *in forma pauperis,* said requests be **DENIED**.

I.   <u>BACKGROUND</u>

Petitioner Terrance Dwayne Williams ("Williams") was indicted in February 2019 and charged with five counts of possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

On June 18, 2019, Williams' attorney, Joshua Briskman ("Briskman"), informed the Court that Williams intended to plead guilty to count five of the indictment pursuant to a plea agreement.  (Doc. 30).  As part of the plea agreement, Williams waived his rights to challenge his guilty plea, conviction, or sentence in a direct appeal or collateral attack, except that he reserved his rights to timely file a direct appeal challenging any

---

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record.  <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989).

sentence imposed in excess of the statutory maximum or constituting an upward departure or variance from the advisory guideline range, and to claim ineffective assistance of counsel in either a direct appeal or § 2255 motion.   (Doc. 33 at 6-7).   In return, the Government agreed that it would not bring any additional charges related to the facts underlying the indictment, would move to dismiss the remaining counts after sentencing, and would recommend that Williams be sentenced at the low end of the advisory guideline range as determined by the Court.   (Id. at 6).   Williams pled guilty to the offense charged in count five of the indictment on June 28, 2019, and the Court accepted his plea and adjudicated him guilty of that offense.   (Docs. 34, 79).

On December 3, 2019, the Court sentenced Williams to 151 months in prison, which represented a sentence at the low end of the advisory guideline range.[3]   (See Doc. 76 at 6, 20).   Six days later on December 9, 2019, Briskman filed a motion to withdraw from further representation of Williams.   (Doc. 55).   On the same date, Williams filed a pro se notice of appeal and requested that the Court appoint counsel to represent him on appeal.   (Doc. 60). The Court granted Briskman's motion to withdraw from the case and appointed new counsel to represent Williams on direct appeal. (Docs. 71, 72).

---

[3] The Court entered a judgment consistent with the pronounced sentence on December 20, 2019.   (Doc. 58).

In March 2020, Williams' appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and asserted that there were no non-frivolous issues for adjudication on appeal. (Doc. 94-1).   On May 22, 2020, the Eleventh Circuit Court of Appeals granted the Government's motion to dismiss Williams' appeal based on the appeal waiver in his plea agreement.   (Doc. 81).[4]

On April 15, 2021,[5] Williams, proceeding *pro se*, filed the instant § 2255 motion, along with a supporting brief and exhibits. (Docs. 84, 84-1).  Williams also filed a motion for discovery which requested that the Court order the Government to provide him with "Grand Jury Transcripts," "Chain of Custody Authorization" for the confidential informant, "Investigative Materials," and the "case file." (Doc. 86).   The Government filed a response in opposition to Williams' motions, and Williams filed a reply.   (Docs. 94, 95).

While his prior § 2255 motion was pending, Williams filed a "Second-In-Time Motion Pursuant to 28 U.S.C. § 2255." (Doc. 111).

---

[4] Williams did not petition the United States Supreme Court for a writ of certiorari.   (See Doc. 84 at 2).

[5] Under the mailbox rule, "a *pro se* prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam).   Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam).   Williams' § 2255 motion states that it was signed and placed in the prison mailing system on April 15, 2021.   (See Doc. 84 at 13).

The Court construed this motion as a motion for leave to amend Williams' pending § 2255 motion and set a briefing schedule on the motion for leave to amend.  (Doc. 112).  The Government filed a timely response in opposition to the motion, and Williams filed a reply.  (Docs. 113, 115).  Thus, Williams' motions are ripe for review.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal.").  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

III.  **DISCUSSION**[6]

A.   **Ineffective Assistance of Counsel in Plea Proceedings.**

Williams alleges that his attorney provided constitutionally ineffective assistance by negotiating and advising him to accept a plea agreement that provided him with no benefits, waived his appellate rights, agreed to the forfeiture of his property, and subjected him to sentencing as a career offender.  (Doc. 84 at 5). Williams alleges that the first time Briskman communicated with him "about the plea" was when he persuaded him to accept the Government's plea offer "at the last minute" on the date of the change-of-plea hearing.  (Doc. 84-1 at 3).

To prevail on a claim of ineffective assistance of counsel, Williams must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) that counsel's poor showing prejudiced his defense because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  Williams bears the burden of proving his ineffective assistance claims, and he must meet his burden on both prongs to succeed.  Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010).

---

[6] For the sake of organization, the Court is considering Williams' grounds for relief in an order different from that in which they were raised.

A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

The proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and courts adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under Strickland, Williams "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To show prejudice in the context of an ineffective-assistance-of-counsel claim arising out of the plea process, Williams "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). A petitioner's bare allegation that he would not have pled guilty but for his counsel's erroneous advice is insufficient to establish prejudice. Roach v. Roberts, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam).

To be knowing and voluntary, (1) a guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). When accepting a guilty plea, a court must ensure that these three "core concerns" of Federal Rule of Criminal Procedure 11 have been met. United States v. Lejarde-Rada, 319 F.3d 1288, 1289 (11th Cir. 2003) (per curiam).

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). As the Supreme Court has made clear:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).

In this case, the record reflects that Williams voluntarily pled guilty to the offense charged in count five of the indictment with full knowledge of the nature of the charge against him and the potential consequences of his plea. At his change-of-plea hearing, Williams acknowledged under oath that he had received copies of both the indictment and the plea agreement, he had been afforded the opportunity to read and review them with his attorney, he had fully discussed all of the facts surrounding the charge with his attorney, and he fully understood and agreed with the terms and conditions of the plea agreement and with the factual resume. (Doc. 79 at 3-4). Williams stated that he was fully satisfied with the representation he had received from his attorney in this case. (Id. at 3). He confirmed that no one had made any promises or attempted to force, pressure, or threaten him in order to induce him to plead guilty. (Id. at 4). The Court informed Williams of the potential penalties for the offense, and Williams acknowledged that he understood those penalties. (Id.). Williams also acknowledged that he understood that his ultimate sentence might differ from any estimate his attorney or anyone else might have given him, that the Court could impose a sentence more or less severe than that called for in the sentencing guidelines, and that he would still be bound by his plea if his sentence was more severe than expected. (Id. at 6). The Court specifically addressed and confirmed that Williams understood the appeal and

collateral attack waiver in the plea agreement and the limited exceptions thereto. (Id. at 6-7). The Court listed the elements of the offense charged in count five, and Williams confirmed that he understood those were the elements to which he was pleading guilty. (Id. at 8). Williams also acknowledged that he had committed the acts detailed in the statement of offense conduct set out in the factual resume.[7] (Id.).

In light of the foregoing, Williams has not met his "heavy burden to show that his statements under oath were false." See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam). As reflected above, the Court addressed Rule 11's core concerns during the guilty plea colloquy and ensured that Williams was entering his plea free from coercion and with

---

[7] The statement of offense conduct in the factual resume stated, in relevant part:

> The Bureau of Alcohol Tobacco and Firearms (ATF) used a confidential informant to make four controlled buys of cocaine from the defendant in the amounts stated and dates stated in the Indictment. The buys were all audio and videotaped. After the fourth buy ATF set up a "buy/bust" operation and recovered 140 grams of cocaine from the defendant which the defendant intended to sell to the informant. Officers also obtained a search warrant for the defendant's home and recovered another ounce of cocaine from the home and $41,459 in U.S. currency that represents drug proceeds. The defendant agrees to forfeit the $41,459 in U.S. currency to the United States as drug proceeds. The defendant made a full confession to his drug trafficking after his arrest.

(Doc. 33 at 11).

understanding of the nature of the charge against him and the consequences of his plea. Nothing in the record supports Williams' belated and self-serving suggestion that his plea was improperly induced, involuntary, or unintelligent because his counsel did not communicate with him about the plea until the date of the change-of-plea hearing. Indeed, Williams' own sworn representations during the plea colloquy directly contradict any such assertion. Thus, to the extent Williams asserts that his guilty plea was not knowing and voluntary, his claim is belied by the record.

Williams' claim that the plea agreement provided him "with no benefits" is also patently false. As a result of the plea agreement, the Government moved to dismiss four of the five counts in the indictment and recommended a sentence at the low end of the guideline range - a recommendation that the sentencing court ultimately accepted. (See Doc. 76 at 15-16, 20, 22). Williams also received a three-point offense level reduction for acceptance of responsibility, which reduced his guideline imprisonment range significantly. (See Doc. 48 at 5; Doc. 76 at 6). Furthermore, there is absolutely nothing to indicate that Williams would have had a viable defense to any of the charges set forth in the indictment had he elected to go to trial. Notably, the charges listed in the five counts of the indictment were not based on evidence uncovered pursuant to the search warrant that Williams unpersuasively argues should have been suppressed; rather, they

were based on multiple audiotaped and videotaped controlled drug purchases and a "buy/bust" operation in which officers recovered cocaine from Williams.[8]

To the extent Williams complains that the plea agreement limited his ability to appeal his conviction or sentence, he offers nothing to suggest that the Government would have entered into a plea agreement without a standard appeal waiver provision. Nor can Williams credibly claim that were it not for his counsel's failure to negotiate a plea agreement without a standard appeal waiver provision, he would not have entered a guilty plea and would instead have insisted on going to trial. See Hill, 474 U.S. at 59. On the contrary, the record reflects that Williams elected to plead guilty with full awareness that by doing so, he was waiving his appellate rights except for in the limited circumstances set out in the plea agreement.

To the extent Williams asserts that his attorney was ineffective for underestimating his sentencing exposure when

---

[8] Williams states: "If litigated the affidavit and search warrant [for his residence] had a good chance of being suppress. . . . If anything should have been granted was a arrest warrant for the controlled buys." (Doc. 84 at 8). The record reflects that although the $41,459 in U.S. currency listed in the forfeiture notice of the indictment was seized from Williams' residence during the execution of the search warrant, along with one ounce of cocaine, the five counts in the indictment were based on four controlled drug purchases and a "buy/bust" operation, not on evidence uncovered pursuant to the search warrant. (See Doc. 1; Doc. 33 at 11; Doc. 48 at 3-4).

advising him to plead guilty, he is entitled to no relief. Construed liberally, Williams' motion implies that his counsel failed to inform him that he would be subject to an enhanced sentence as a career offender.  (See Doc. 84 at 5; Doc. 84-1 at 3).  Williams claims that his guideline imprisonment range "was 51-63 months" before he signed the plea agreement, but "after the signing it jump to 151-188 months."  (Doc. 95 at 6).  This latter assertion is refuted by the record, which reflects that on May 31, 2019, nearly one month before Williams signed the plea agreement, the probation officer remarked that Williams "appears to be a career offender" and calculated his guideline imprisonment range to be 151 to 188 months.  (See Doc. 10 at 1, 5).[9]

Even assuming _arguendo_ that Williams' counsel underestimated his likely sentence or failed to inform him that he might be subject to the career offender enhancement, Williams cannot establish that counsel's performance was constitutionally ineffective.  First, "an erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance."  Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir.

_____

[9] On June 13, 2019, Briskman certified under the penalty of perjury that "[a] copy of the Probation Officer's report containing the preliminary guideline calculations has been shown to the defendant and we discussed the guideline calculations contained in the report[.]"  (Doc. 24).  And Williams confirmed during his guilty plea colloquy that he and his attorney had discussed how the guidelines might affect his case.  (Doc. 79 at 5-6).

Unit B Mar. 12, 1981).[10]  Moreover, the properly conducted plea colloquy dispelled any prejudice created by counsel's allegedly inaccurate sentence prediction.  See, e.g., Wilborn v. United States, 2014 WL 3385307, at *8 (N.D. Ala. July 10, 2014) (["W]here, as here, a court correctly advises a defendant at the plea colloquy about his potential sentence, including its possible maximum and minimum, a defendant generally cannot establish prejudice on an effective-assistance claim based on an erroneous sentence prediction."); United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (per curiam) (holding that petitioner failed to show that his plea was not entered knowingly and voluntarily because although counsel had not told petitioner he could be subject to the career offender enhancement, the court informed petitioner that any sentencing estimates made by counsel were not binding on the court and informed him of the maximum possible penalties he faced); Durant v. United States, 2009 WL 535985, at *6 (S.D. Ga. Mar. 3, 2009) ("[E]ven if counsel failed to advise Petitioner of the maximum sentence he could receive, [the judge] more than adequately explained the maximum possible penalty to Petitioner at the Rule 11 colloquy, and no prejudice inured to him because of counsel's alleged errors.").

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Finally, to the extent Williams suggests his counsel was ineffective for failing to object to the confession of forfeiture contained in the plea agreement, the Court notes that "a challenge to forfeiture is outside the scope of a § 2255 proceeding because § 2255 affords relief only to those prisoners who claim the right to be released from custody." Ihm v. United States, 2020 U.S. Dist. LEXIS 33083, at *11, 2020 WL 919629, at *4 (M.D. Fla. Feb. 26, 2020). Thus, a claim that counsel "ineffectively failed to challenge the court's forfeiture order" is "not cognizable in § 2255 proceedings." Lopez v. United States, 2020 U.S. Dist. LEXIS 141573, at *12, 2020 WL 5868175, at *5 (S.D. Fla. Aug. 6, 2020), report and recommendation adopted, 2020 U.S. Dist. LEXIS 181489, 2020 WL 5848638 (S.D. Fla. Oct. 1, 2020); see, e.g., Tarabein v. United States, 2021 U.S. Dist. LEXIS 214364, at *19, 2021 WL 5167294, at *7 (S.D. Ala. Nov. 5, 2021) ("Because [petitioner's] claim that his attorneys were ineffective for failing to challenge the forfeiture of his properties does not seek relief from a custodial sentence, it is not cognizable under § 2255."); Ihm, 2020 U.S. Dist. LEXIS 33083, at *11, 2020 WL 919629, at *4 ("[A] claim of ineffective assistance of counsel in connection with the forfeiture of petitioner's [property] is not cognizable on a § 2255 motion because it 'would in no part relieve petitioner from his physical confinement . . . .'") (citation omitted).

Even if Williams could claim ineffective assistance of counsel in connection with the forfeiture of his property in this § 2255 proceeding, he has shown no basis for relief. Williams confirmed under oath during the plea colloquy that he had been given the opportunity to read and review the plea agreement with his attorney, and that he fully understood and agreed with its terms and conditions. Williams does not - and cannot credibly - allege that he was unaware of the forfeiture provision in the plea agreement, nor does he assert that his knowledge or lack of knowledge of the forfeiture provision impacted his decision to plead guilty. Williams also provides nothing to indicate that the Government would have entered into the plea agreement absent the forfeiture provision. And, contrary to Williams' assertion,[11] a "criminal proceeding . . . may often include forfeiture as part of the sentence." United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555, 567 (1983); see also Libretti v. United States, 516 U.S. 29, 39 (1995) ("Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes.").

In sum, the record firmly establishes that Williams' guilty plea was knowing and voluntary. Williams' assertions regarding

---

[11] Williams contends that "a forfeiture is a civil matter that should have been separate from the criminal case." (Doc. 84-1 at 3).

16

his counsel's performance in negotiating and advising him to accept the plea agreement are either controverted by the record, incorrect, or insufficient to establish constitutionally deficient performance. Accordingly, Williams is entitled to no relief with respect to these claims.

**B.   Ineffective Assistance of Counsel in Pre-Plea Matters.**

Williams further alleges that his counsel was ineffective "for failing to conduct a pretrial investigation and backgr[ou]nd check of the confidential informant." (Doc. 84 at 4). Williams contends that a background check would have revealed that the confidential informant used by law enforcement in his case was a resident of Mississippi, "had pending drug charges in the State of Mississippi," and "was crossing state line into Mobile County acting in the capacity of a special agent." (Id.). According to Williams, "[t]his favorable evidence was withheld from the defense . . . in violation of Due Process of the U.S. Constitution." (Id.).

Williams also alleges that his attorney was ineffective for withdrawing his motion to suppress with no "back up plan." (Id. at 8). Williams asserts that if his attorney had not withdrawn his motion to suppress, the motion "had a good chance" of resulting in the suppression of "the affidavit and search warrant" because the information provided by the confidential informant was hearsay, the informant had never seen or purchased drugs at

Williams' residence, and the controlled drug purchases did not take place at Williams' residence.  (Id.).

The record reflects that on June 7, 2019, Briskman filed a motion to suppress all evidence seized or uncovered as a result of the execution of a search warrant issued for Williams' residence. (Doc. 19).  The motion asserted that the evidence should be suppressed because police "waited an unreasonable amount of time" between the issuance of the search warrant by a Mobile County District Court judge on December 1, 2018, and the execution of the search warrant on December 10, 2018.  (Id.).  The motion also asserted, without further argument, that the evidence should be suppressed because the confidential informant had not been shown to be a reliable source.  (Id.).

The Government filed a response in opposition to the motion to suppress on June 17, 2019.  (Doc. 26).  In the response, the Government argued that the search warrant was executed within a reasonable time and pointed out that by executing and returning the warrant in nine days, the police complied with the directives in the warrant itself and with Federal Rule of Criminal Procedure 41.[12]  (Id. at 1-2).  The Government also argued that Williams had

---

[12] Rule 41 provides: "The warrant must command the officer to . . . execute the warrant within a specified time no longer than 14 days."  Fed. R. Crim. P. 41(e)(2)(A)(i).  The warrant for Williams' residence stated: "You are further commanded to return this warrant . . . within ten days."  (Doc. 19-2 at 1).

offered no evidence to demonstrate that the confidential informant was unreliable.  (Id. at 2).  The Government cited evidence from Williams' own exhibits indicating that agents had relied on the informant for multiple controlled buys, that agents had surveilled the informant, that the informant was equipped with audio and video recording equipment and GPS-type tracking equipment, and that various drug transactions between Williams and the informant were captured on video.  (Id.).  After the Government filed its response on June 17, 2019, Briskman moved to withdraw the motion to suppress later that day.  (Doc. 27).  The Court granted the motion to withdraw and deemed Williams' suppression motion withdrawn and therefore moot.  (Doc. 28).  Williams entered his guilty plea ten days later.  (See Docs. 34, 79).

A knowing, voluntary, and unconditional guilty plea "waives all non-jurisdictional defects occurring prior to the time of the plea," Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam), "and only an attack on the voluntary and knowing nature of the plea can be sustained." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam).  Thus, "a § 2255 movant who entered a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern his decision to enter the plea." Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam); see Wilson, 962 F.2d at 997.

"Claims that trial counsel gave ineffective assistance in regard to a Fourth Amendment suppression issue are among those challenges waived by a knowing and voluntary guilty plea." Skow v. United States, 2016 U.S. Dist. LEXIS 78360, at *5, 2016 WL 3344577, at *2 (N.D. Ga. June 16, 2016). "Such is the case even where a § 2255 petitioner claims that counsel's misadvice on a Fourth Amendment issue somehow rendered his guilty plea unknowing so long as the record of the plea colloquy reflects that the defendant entered the plea knowingly and voluntarily." Id.

Likewise, claims that counsel failed to conduct a sufficient pre-plea investigation are waived by a knowing and voluntary guilty plea. See Edwards v. United States, 2018 U.S. App. LEXIS 15132, at *2, 2018 WL 3586866, at *1 (11th Cir. June 4, 2018) ("[I]n accordance with his plea agreement and guilty plea, Edwards has waived the ineffective assistance claim concerning counsel's alleged failure to investigate the inventory search officers."); Desenclos v. United States, 2015 U.S. Dist. LEXIS 199269, at *17, 2015 WL 13888764, at *6 (S.D. Fla. Nov. 25, 2015) ("The Movant's claim that counsel engaged in inadequate pretrial investigation was waived by his knowing and voluntary guilty plea."), report and recommendation adopted, 2016 U.S. Dist. LEXIS 202839, 2016 WL 11717118 (S.D. Fla. Feb. 26, 2016); Clark v. United States, 2018 U.S. Dist. LEXIS 211598, at *21-22, 2018 WL 6606515, at *7 (M.D. Fla. Dec. 17, 2018) ("Because Petitioner entered a knowing and

20

voluntary guilty plea, he waived any claim that counsel's pre-plea investigation was deficient.") (internal record citation omitted); Diggs v. United States, 2010 U.S. Dist. LEXIS 13995, at *10, 2010 WL 582772, at *4 (N.D. Ga. Feb. 18, 2010) ("[B]y pleading guilty to his crimes of conviction, . . . and by acknowledging on two separate occasions that his plea was knowing and voluntary, Diggs waived his § 2255 claims alleging that his trial counsel provided ineffective assistance by conducting an inadequate pretrial investigation, by failing to challenge the indictment based on the lack of evidence that Diggs possessed a firearm during the bank robbery, and by failing to seek the grand jury minutes."); Beasley v. United States, 2010 U.S. Dist. LEXIS 126624, at *17, 2010 WL 4961056, at *7 (S.D. Fla. Oct. 19, 2010) ("Beasley's claims that counsel failed to conduct adequate pretrial investigation and file a pre-trial motion to suppress his confession were waived by his entry of a voluntary guilty plea."), report and recommendation adopted, 2010 U.S. Dist. LEXIS 126630, 2010 WL 4973307 (S.D. Fla. Dec. 1, 2010).

As set forth in detail above, Williams has implied but failed to demonstrate that his guilty plea was improperly induced, involuntary, or unintelligently given. Williams does not allege in his motion or supporting brief that his counsel's withdrawal of the suppression motion and alleged failure to investigate the confidential informant rendered his guilty plea unknowing or

involuntary.  Thus, Williams' claims of ineffective assistance of counsel based on his attorney's alleged failure to conduct an adequate pretrial investigation and withdrawal of the suppression motion are waived.  Further, Williams offers nothing to suggest that his counsel would have been able to compel the confidential informant's identity, or that the suppression motion would have been successful had it not been withdrawn.  And, even if counsel had been successful in obtaining the information about the informant that Williams now alleges or in suppressing the evidence seized pursuant to the search warrant, there is no reasonable probability that this would have changed Williams' decision to enter a negotiated guilty plea.  Accordingly, Williams is entitled to no relief with respect to his pre-plea ineffective assistance claims.[13]

---

[13] In his reply brief, Williams claims for the first time that his "counsel performed deficiently by not moving for a Franks hearing." (Doc. 95 at 5).  In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," the court should hold a hearing as to the veracity of the affidavit.  Id. at 155-56.  "The remedy for a Franks violation is for the court to declare the search warrant invalid and suppress the evidence seized pursuant to the warrant."  United States v. Valencia-Trujillo, 2006 WL 1320248, at *3 (M.D. Fla. May 12, 2006), aff'd, 573 F.3d 1171 (11th Cir. 2009).

Williams' attempt to raise a new claim in a reply brief is impermissible.  The Rules Governing Section 2255 Proceedings require that a § 2255 motion "specify all the grounds for relief

available to the moving party" and "state the facts supporting each ground." Rules Governing § 2255 Proceedings, R. 2(b). Williams did not raise the issue of his counsel's failure to move for a <u>Franks</u> hearing in his § 2255 motion, and he did not seek leave to amend his § 2255 motion to add such a claim, thereby leaving the Government with no opportunity to respond to the new claim. Accordingly, Williams' belated claim that his counsel was ineffective for failing to pursue a <u>Franks</u> hearing is deemed waived and is not cognizable on collateral review. <u>See, e.g.</u>, <u>Oliveiri v. United States</u>, 717 F. App'x 966, 967 (11th Cir. 2018) (per curiam) (finding that the district court did not err by failing to address § 2255 movant's claim that his counsel was ineffective for failing to object to a sentencing enhancement because the petitioner waived the claim by raising it for the first time in his reply to the Government's response to his § 2255 motion). Further, since it is a pre-plea ineffective assistance of counsel claim that does not concern his decision to enter a guilty plea, Williams' claim of deficient performance for failing to pursue a <u>Franks</u> hearing is also waived by his knowing and voluntary guilty plea. <u>See</u> <u>Broderick v. United States</u>, 2020 U.S. Dist. LEXIS 54884, at *33-34, 2020 WL 1511854, at *14 (M.D. Fla. Mar. 30, 2020), <u>certificate of appealability denied</u>, 2020 U.S. App. LEXIS 25766, 2020 WL 6280808 (11th Cir. Aug. 13, 2020).

Even if Williams had not waived his claim relating to counsel's failure to move for a <u>Franks</u> hearing, he has failed to specifically identify the allegedly "misleading and deceptive" statements in the search affidavit, much less make a showing that the affiant included false statements that were necessary to a finding of probable cause either intentionally or in reckless disregard for the truth. The affidavit stated that the confidential informant had supplied information in the past that had proven to be reliable, it noted that the confidential informant had stated that Williams was selling and storing suspected cocaine at his residence, and it detailed how investigators had observed Williams returning to the residence shortly after participating in two controlled drug transactions. (Doc. 26-1). The affiant also stated that it had been his experience as an investigator that "drug dealers commonly keep currency, notes, and other documents related to their drug transactions." (<u>Id.</u> at 14). Even accepting the accuracy of Williams' statement that "[t]he C.I. never stated he been to the residence and seen drugs [or] bought any drugs at the home[,]" this does not indicate that the affiant included false statements in the affidavit knowingly or with reckless disregard for the truth, nor does it demonstrate that the remaining content in the search affidavit was insufficient to establish probable

**C.    Ineffective Assistance of Counsel at Sentencing.**

Williams additionally asserts that his counsel was ineffective during his sentencing proceedings for failing to adequately challenge his classification as a career offender under the sentencing guidelines. (Doc. 84 at 7). Specifically, Williams faults Briskman for failing to invoke the Supreme Court's decision in Mathis v. United States, 579 U.S. 500 (2016), and for failing to argue that Williams did not have two prior drug convictions that qualified as a "controlled substance offense" for purposes of the career-offender enhancement. (Id.).

A defendant is subject to a sentencing enhancement as a career offender under the guidelines "if: (1) he was at least 18 years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a 'crime of violence' or a 'controlled substance offense'; and (3) he has at least two prior felony convictions for either a 'crime of violence' or a 'controlled substance offense.'" United States v. Howard, 767 F. App'x 779, 784 (11th Cir. 2019) (per curiam) (citing U.S.S.G. § 4B1.1(a)).

---

cause. In addition, Williams' focus on the search affidavit and warrant overlooks the fact that none of the five counts in the indictment were based on evidence uncovered pursuant to the search warrant. Even if the search warrant was declared to be invalid and the evidence seized pursuant to the warrant was suppressed, there is no reasonable probability that this would have impacted Williams' decision to plead guilty.

The record reflects that the presentence investigation report ("PSR") determined that Williams was a career offender pursuant to U.S.S.G. § 4B1.1, subjecting him to an advisory guideline range of 151 to 188 months' imprisonment. (Doc. 48 at 5, 10). The predicate offenses used for the career offender enhancement included Williams' 1996 conviction in this Court for conspiracy to possess with intent to distribute crack cocaine, and his 2004 conviction in Baldwin County Circuit Court for trafficking cocaine. (See id. at 6-7).

Williams' counsel initially raised no objections to the PSR. (Doc. 51). However, pursuant to Williams' request, Briskman subsequently requested and was granted leave to file an out-of-time objection to the PSR's career-offender determination on the basis that Williams' 2004 state conviction was not final because Williams still intended to assert violations of his constitutional rights in that case.[14] (Docs. 52, 53). At the sentencing hearing, Briskman expanded on the objection and argued that the Court should

---

[14] In the "motion to file out of time objection to PSI report and singular objection to career offender status," Briskman stated: "In subsequent meetings with Defendant Williams has requested that his counsel submit the following objection to his status as a career offender. Specifically the Defendant wishes the Court to note that he still intends to challenge his 2004 conviction for trafficking cocaine in Baldwin County, Alabama on the basis that he still intends to assert violations of his constitutional rights in that case. Therefore it is the Defendant's position that that conviction is not final for purposes of establishing his status as a career offender." (Doc. 52 at 1).

not count either of Williams' prior felony drug convictions as career-offender predicates because of their remoteness in time. (Doc. 76 at 3-4). The Court overruled the objections, adopted the PSR as published, and sentenced Williams to 151 months' imprisonment. (Id. at 5-6, 20).

Williams claims that his counsel "fail[ed] to learn" that the Court was required to "conduct a categorical approach before enhancing a defendant under 4B1.1 career offender." (Doc. 84-1 at 4). Courts use the categorical approach to determine whether a prior conviction qualifies as a predicate controlled substance offense under the guidelines. Hollis v. United States, 958 F.3d 1120, 1123 (11th Cir. 2020) (per curiam). This means that courts "compare the definition in the Guidelines with the statutory offense, not the conduct underlying the conviction." United States v. Lange, 862 F.3d 1290, 1293 (11th Cir. 2017) (quotation omitted), overruled on other grounds by United States v. Dupree, 57 F.4th 1269 (11th Cir. Jan. 18, 2023) (en banc). Courts "look to the plain language of the definitions to determine their elements, and we need not search for the elements of generic definitions of 'controlled substance offense' because the term is defined by the Sentencing Guidelines." Id. (citation, quotation marks, and alterations omitted). For a drug offense to qualify as a predicate offense under the career-offender guideline, "the language of the

statute need not match the Guidelines definition exactly." Hollis, 958 F.3d at 1123.

The Supreme Court's decision in Mathis[15] is not applicable to Williams' case because it involved the determination of whether a defendant's prior conviction qualified as a "violent felony" predicate offense under the Armed Career Criminal Act, 18 U.S.C. § 924(e). See Walker v. United States, 2017 U.S. Dist. LEXIS 80425, at *2, 2017 WL 2294088, at *1 (S.D. Ga. May 25, 2017) (stating that Mathis "does not affect how prior drug offenses are (1) considered under the United States Sentencing Guidelines; and (2) used to determine whether a defendant qualifies for a career offender sentence enhancement under U.S.S.G. §§ 4B1.1 and 4B1.2"); United States v. Williams, 2019 U.S. Dist. LEXIS 224590, at *7-8, 2019 WL 7546939, at *3 (N.D. Fla. Dec. 5, 2019) (noting that Mathis is "not applicable" in determining whether a prior conviction qualifies as a controlled substance offense for purposes of the career offender enhancement because it involved "the determination of whether a defendant's prior convictions qualify as 'violent felony' predicate offenses under the Armed Career Criminal Act"),

---

[15] In Mathis, the Supreme Court provided guidance regarding how to distinguish between "alternative means" and "alternative elements" in the definition of a prior conviction for purposes of deciding whether the modified categorical approach could be used to determine whether the prior conviction is a violent felony under the Armed Career Criminal Act.

report and recommendation adopted, 2020 U.S. Dist. LEXIS 3450, 2020 WL 109835 (N.D. Fla. Jan. 9, 2020).

Although Williams' § 2255 motion does not specify which prior conviction(s) he believes his counsel should have objected to counting as a career-offender predicate, he now "concedes" that his prior state drug trafficking conviction qualified as a controlled substance offense under § 4B1.2(b). (See Doc. 111 at 23). However, Williams argues that his prior federal conviction for conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 "does not count as the required second [career-offender] predicate offense because it was not a controlled substance offense." (Id.).

The guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). The commentary in Application Note 1 to § 4B1.2 states that the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." Id. at § 4B1.2, cmt. n.1.

At the time of Williams' sentencing, binding Eleventh Circuit precedent considered this commentary to be a "binding

interpretation" of the term "controlled substance offense" and thus interpreted § 4B1.2(b) in light of the commentary. See United States v. Lange, 862 F.3d 1290, 1294 (11th Cir. 2017); United States v. Smith, 54 F.3d 690, 693 (11th Cir. 1995). However, in Dupree, the en banc Eleventh Circuit determined that Smith and Lange were "wrong" to interpret § 4B1.2(b) in light of the commentary. 57 F.4th at 1279. Because "the text of § 4B1.2(b) unambiguously excludes inchoate crimes[,]" the Eleventh Circuit found that there is "no need to consider, much less defer to, the commentary in Application Note 1." Id. Based on its holding "that the definition of 'controlled substance offense' in § 4B1.2(b) does not include inchoate offenses" such as conspiracy, the Eleventh Circuit found that Dupree's conviction for conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 was not a controlled substance offense within the meaning of the career offender enhancement. Id. at 1271, 1280.

Like Dupree, Williams contends that he should not have been sentenced as a career offender because his federal drug conspiracy conviction was not a predicate controlled substance offense. However, to the extent Williams suggests that his counsel rendered ineffective assistance by failing to make this argument during his sentencing proceedings, he cannot show deficient performance. Binding precedent at the time of his sentencing proceedings held

that a conviction for conspiracy to possess with intent to distribute a controlled substance under 21 U.S.C. § 846 was a controlled substance offense for purposes of the career offender enhancement.  See United States v. Weir, 51 F.3d 1031, 1031-32 (11th Cir. 1995), overruled by Dupree, 57 F.4th at 1279 n.9; see also United States v. Dupree, 849 F. App'x 911, 912 (11th Cir. 2021) (per curiam) ("Dupree's argument that § 846 conspiracy is not a controlled substance offense is foreclosed by our holding in Weir."), reh'g en banc granted, opinion vacated, 25 F.4th 1341 (11th Cir. 2022), and on reh'g en banc, 57 F.4th 1269.  Although the en banc Eleventh Circuit subsequently overruled that precedent, "[a]n attorney's failure to anticipate a change in the law does not constitute ineffective assistance." Steiner v. United States, 940 F.3d 1282, 1293 (11th Cir. 2019) (per curiam); see United States v. Lee, 2023 U.S. Dist. LEXIS 19633, at *7, 2023 WL 1781648, at *3 (M.D. Fla. Feb. 6, 2023) ("Dupree entitles Lee to no relief.  Dupree appeared after Lee's 2019 sentencing, and 'defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law.'") (citation omitted); United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring in the denial of rehearing en banc) ("[T]he rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change

is such that the forfeited issue was, in hindsight, a sure fire winner.").

Accordingly, Williams has not shown that his attorney rendered constitutionally deficient performance by failing to object to the career offender enhancement based on Mathis, or by failing to argue that Williams did not have the two predicate offenses necessary for a career offender enhancement because his prior § 846 drug conspiracy conviction did not meet § 4B1.2(b)'s definition of a controlled substance offense.  Thus, Williams is entitled to no relief as to this claim.

### D.    Ineffective Assistance of Appellate Counsel.

As his final ground for relief, Williams argues that his appellate counsel was ineffective for filing an Anders brief.[16] (Doc. 84-1 at 20).  According to Williams, "non-frivolous issues existed for appeal," including a challenge to his classification as a career offender under U.S.S.G. § 4B1.1 and a claim of ineffective assistance on the part of his plea and sentencing counsel.  (Doc. 84 at 7; Doc. 84-1 at 20; Doc. 95 at 7).

---

[16] An Anders brief is filed by a defense attorney who seeks to withdraw from a case on appeal based on a belief that there are no meritorious issues to raise on appeal.  See Anders, 386 U.S. at 744 ("[I]f counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.  That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland." Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013) (quotation omitted). To determine whether such a claim has merit, a court "must decide whether the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." Id. (quotation omitted). However, if "the omitted claim would have had a reasonable probability of success on appeal, then counsel's performance necessarily resulted in prejudice." Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997) (per curiam).

Williams' appellate counsel was not ineffective for failing to challenge the district court's application of the career offender enhancement. First, as counsel correctly recognized (see Doc. 94-1 at 12, 22-24), any challenge to Williams' career-offender classification on direct appeal would have been barred by the appeal waiver in the plea agreement, and none of the limited exceptions to the appeal waiver applied to such a claim. Indeed, the Eleventh Circuit determined that Williams had knowingly and voluntarily agreed to the appeal waiver and granted the Government's motion to dismiss Williams' direct appeal pursuant to

the appeal waiver.  (See Doc. 81).  In doing so, the appellate court specifically noted that "although Williams objected to his career-offender status during sentencing, an enforceable appeal waiver is not made unenforceable by issues disputed at sentencing and waives the right to appeal debatable legal issues." (Id. at 2-3); see, e.g., United States v. Buckner, 808 F. App'x 755, 765-66 (11th Cir. 2020) (per curiam) (finding that defendant's valid and enforceable sentence appeal waiver barred his claim that he was improperly classified as a career offender).  Thus, Williams' appellate counsel was not ineffective for failing to challenge the application of the career offender enhancement on direct appeal.

Nor can Williams show that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of counsel on direct appeal.  The Eleventh Circuit generally will not consider claims of ineffective assistance of counsel raised on direct appeal where, as here, the district court did not entertain the claim and did not develop a factual record.  United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002).  Instead, "[a]n ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255." United States v. Butler, 41 F.3d 1435, 1437 n.1 (11th Cir. 1995); see also Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that "in most cases[,] a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance").

33

Williams does not specify the grounds on which his appellate counsel could have based an ineffective assistance of counsel claim, and there is nothing in the instant § 2255 motion to suggest either that the appellate court would have entertained such a claim or that the claim would have had a reasonable prospect of success. Williams also does not explain how he was prejudiced by his appellate counsel's failure to raise claims of ineffective assistance of trial counsel on direct appeal, given that he was able to raise such claims in the instant motion. See id. at 509 (holding that the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). Accordingly, Williams' assertions of ineffective assistance on the part of his appellate counsel are without merit, and he is entitled to no relief as to this claim.

      **E.   Brady Claim.**

Although not asserted as a stand-alone ground for relief, Williams argues in his § 2255 motion, motion for discovery, and reply brief that the Government violated his right to due process under Brady v. Maryland, 373 U.S. 83 (1963), by withholding "favorable evidence" about the confidential informant from the defense. (See Doc. 84 at 4; Doc. 84-1 at 1; Doc. 86 at 2; Doc. 95 at 8). Specifically, Williams alleges that the Government failed to disclose that the confidential informant was a resident of

Mississippi, had a drug conviction in this Court in the early 1990s, had pending drug charges in Mississippi, and "cross[ed] state line[s] into Alabama" while "acting in the capacity of a special agent." (See id.).

Williams' Brady claim is barred by the collateral attack waiver in his plea agreement. A defendant who enters into a plea agreement may waive the right to collaterally attack his conviction or sentence under § 2255. See, e.g., Griffis v. United States, 746 F. App'x 880, 882-83 (11th Cir. 2018) (per curiam). Collateral attack waivers are valid if they are made knowingly and voluntarily. Williams v. United States, 396 F.3d 1340, 1341-42 (11th Cir. 2005). They are enforceable if the Government shows "either (1) the district court specifically questioned the defendant concerning the [collateral attack] waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id. at 1341 (quoting United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993)).

In this case, both requirements are met. Williams' plea agreement clearly stated that as part of the agreement, Williams was "knowingly and voluntarily waiv[ing] the right to file any direct appeal or any collateral attack, *including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255*." (Doc. 33 at 6-7) (emphasis added). The plea agreement made clear

that the only exceptions to this waiver were (1) a direct appeal challenging any sentence exceeding the statutory maximum; (2) a direct appeal challenging any sentence constituting an upward departure or variance from the advisory guideline range; and (3) a direct appeal or a § 2255 motion raising a claim of ineffective assistance of counsel. (Id. at 7). At his guilty plea hearing, Williams expressly confirmed that he had read and signed the plea agreement, reviewed it with his attorney, and fully understood and agreed to be bound by all of its terms and conditions. (Doc. 79 at 3-4). The Court specifically addressed the appeal and collateral attack waiver provision in the plea agreement and its limited exceptions, and Williams expressly acknowledged that he understood the terms of the waiver provision. (Id. at 6-7).

The record amply demonstrates that Williams' agreement to plead guilty, including his limited waiver of his rights to file an appeal or collateral attack, was knowing and voluntary. Indeed, in dismissing Williams' direct appeal, the Eleventh Circuit determined that Williams knowingly and voluntarily agreed to the appeal waiver, and that the appeal waiver was valid and enforceable. (See Doc. 81). The same facts supporting the Eleventh Circuit's enforcement of Williams' appeal waiver on direct appeal support this Court's enforcement of his collateral attack waiver.

William's <u>Brady</u> claim clearly falls within the scope of the
collateral attack waiver, and none of the limited exceptions to
the collateral attack waiver apply to the claim.  See <u>Weaver v.
United States</u>, 2010 U.S. Dist. LEXIS 23647, at *13, 2010 WL 680778,
at *5 (M.D. Fla. Feb. 24, 2010) (finding petitioner's claim of a
<u>Brady</u> violation barred by the collateral attack waiver in his plea
agreement); <u>United States v. Pizarro-Campos</u>, 506 F. App'x 947, 950
(11th Cir. 2013) (per curiam).  Accordingly, Williams' claim that
the Government withheld evidence in violation of <u>Brady</u> is barred
by the collateral attack waiver in his plea agreement and is due
to be dismissed on that basis.[17]

   **F.   Motion for Leave to Amend (Doc. 111).**

On April 13, 2023, while his first § 2255 motion was pending,
Williams filed a "Second-In-Time Motion Pursuant to 28 U.S.C. §
2255" seeking to raise a new substantive claim based on the en
banc Eleventh Circuit's recent decision in <u>Dupree</u>.  (Doc. 111).
In the "Second-In-Time" motion, Williams argues that his prior
federal conviction for conspiracy to possess with intent to
distribute crack cocaine is not a valid career-offender predicate
in light of <u>Dupree</u>'s holding that the definition of "controlled
substance offense" in § 4B1.2(b) does not include inchoate offenses

---

[17] Williams' claim of a <u>Brady</u> violation is also without merit, for
the reasons set forth in the Government's response.  (<u>See</u> Doc. 94
at 30-32).

such as conspiracy.  (Id. at 23).  Thus, Williams contends that the Court improperly applied the career offender enhancement to calculate his guideline range because he lacked the requisite two prior felony convictions for either a "crime of violence" or a "controlled substance offense."  (Id.).

Because it was filed while the prior § 2255 motion (Doc. 84) was still pending, the undersigned construed Williams' "second-in-time" motion (Doc. 111) as a motion for leave to amend the pending § 2255 motion and set a briefing schedule on the motion. (Doc. 112 at 2-3); see Daker v. Toole, 736 F. App'x 234, 235 (11th Cir. 2018) (per curiam) ("We agree with other federal courts of appeals which have held that, 'where a new pro se petition is filed before the adjudication of a prior petition is complete, the new petition should be construed as a motion to amend the pending petition rather than as a successive application.'") (citations omitted); Blackmon v. Sec'y, Dep't of Corr., 803 F. App'x 232, 234 (11th Cir. 2020) (per curiam) (indicating that where petitioner filed habeas petition while a prior habeas petition was still pending, the district court should have construed the new petition as a motion to amend the prior petition).

"Under Rule 12 of the Rules Governing § 2255 Proceedings, a district court may apply the Federal Rules of Civil Procedure in a lawful manner consistent with the Rules Governing § 2255 Proceedings."  Farris v. United States, 333 F.3d 1211, 1215 (11th

Cir. 2003); see Rules Governing § 2255 Proceedings, R. 12.   Rule
15(a) of the Federal Rules of Civil Procedure provides that if
more than twenty-one days have passed since service of a responsive
pleading, "a party may amend its pleading only with the opposing
party's written consent or the court's leave."   Fed. R. Civ. P.
15(a)(2).   "The court should freely give leave when justice so
requires."   Id.   That said, a district court may deny leave to
amend if the amendment would be futile, such as when a petitioner's
proposed new claims are untimely, meritless, or barred by the
collateral attack waiver in his plea agreement.   See Bryant v.
Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) ("A
district court need not . . . allow an amendment . . . where
amendment would be futile."); Terry v. United States, 2020 U.S.
App. LEXIS 26367, at *4, 2020 WL 4977478, at *2 (11th Cir. Aug.
19, 2020) ("[T]he district court properly denied Terry leave to
amend his § 2255 motion because the claims that he sought to add
would have been futile, as they were meritless."); Frank v. United
States, 2011 U.S. Dist. LEXIS 152937, at *32, 2011 WL 7167025, at
*10 (S.D. Ga. Oct. 28, 2011) ("[A]ll Petitioner's proposed new
claims are either untimely or are barred by the collateral attack
waiver in his plea agreement.   Petitioner's motions to amend should
therefore be **DENIED** for futility to the extent that they seek to
add new claims.") (emphasis in original), report and

recommendation adopted, 2012 U.S. Dist. LEXIS 14865, 2012 WL 397303 (S.D. Ga. Feb. 7, 2012).

In its response to Williams' motion for leave to amend, the Government argues that Williams cannot raise a new substantive challenge to his career-offender designation based on Dupree "because he waived that right in his plea agreement, his claim is not cognizable in a § 2255 motion, and his claim is procedurally defaulted."[18] (Doc. 113 at 4). The Court need only address the first of these arguments, as it is clearly dispositive.

As addressed previously, there is no question that Williams knowingly and voluntarily agreed to the collateral attack waiver in his plea agreement, and the Court specifically highlighted and questioned Williams about the appeal and collateral attack waiver during the plea colloquy to ensure that he understood and agreed to the waiver's terms. Williams' claim that the district court improperly applied the sentencing guidelines by enhancing his sentence pursuant to the career offender provision in § 4B1.1 does not fall within an exception to the collateral attack waiver in his plea agreement. See Buckner, 808 F. App'x at 765-66.

---

[18] The Government also argues in its response that "Dupree does not give rise to a claim of ineffective assistance because Williams' trial counsel had no obligation to anticipate the change in law." (Doc. 113 at 4). Because the Court has already addressed this argument in connection with the ineffective-assistance-of-counsel claim raised in ground three of Williams' § 2255 motion, there is no need to address it again in connection with the motion for leave to amend.

Therefore, since the substantive claim that Williams seeks to raise based on Dupree is barred by the collateral attack waiver in his plea agreement, his motion for leave to amend (Doc. 111) is due to be denied as futile.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. See Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Williams' claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Williams is not entitled to a certificate of appealability and should not be permitted to proceed *in forma pauperis* on appeal.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner Terrance Dwayne Williams' Motion to Vacate, Set Aside, or Correct

Sentence under 28 U.S.C. § 2255 (Doc. 84) and motion for leave to amend (Doc. 111) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Terrance Dwayne Williams.  It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED**.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **15th** day of **February, 2024.**

    **/s/ SONJA F. BIVINS**
    **UNITED STATES MAGISTRATE JUDGE**